# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 1:14-CIV-24583-COOKE/TORRES

LARRY GILMORE,
individually and on behalf of a class
of similarly situated individuals,

      Plaintiff,

v.

MIAMI BEACH HEALTHCARE GROUP, LTD.
d/b/a AVENTURA HOSPITAL AND MEDICAL
CENTER, a Florida Limited Partnership, and
HCA-EMCARE HOLDINGS, LLC d/b/a
VALESCO VENTURES, a Delaware Corporation,

      Defendants.

_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Larry Gilmore ("Mr. Gilmore" or "Plaintiff") brings this Amended Class Action

Complaint against Defendants, Miami Beach Healthcare Group, Ltd., ("Miami Beach

Healthcare"), and HCA-EmCare Holdings, LLC d/b/a Valesco Ventures ("Valesco"), and alleges

as follows, upon personal knowledge as to himself and his own acts and experiences, and as to all

other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action lawsuit under Rule 23, *Fed. R. Civ. P.*, against

Defendants for their failure to adequately protect the confidential personal and medical

information of their current and former patients—conduct that has ultimately resulted in the theft

of their sensitive information or in the substantial, imminent risk of exposure in the "cyber black market" where the information is traded for money and used to commit various forms of fraud.

2.      Defendant Miami Beach Healthcare is part of a highly integrated non-governmental, for-profit healthcare delivery system consisting of shared facilities, ownership, and providers in locations throughout Florida, including this District.   As a matter of course, Defendants require patients to provide and collect confidential personal and medical information for billing, treatment, and other purposes that Defendants have a legal duty to protect from unauthorized disclosure.

3.       Nevertheless, Defendant, Miami Beach Healthcare, which manages the HCA facility doing business as "Aventura Hospital and Medical Center," has allowed no less than three significant unauthorized disclosures of sensitive patient information within the last two years.

4.       Between September 13, 2012, and June 9, 2014, a employee of Defendant Valesco, while that Defendant was under contract with Miami Beach Healthcare to provide staffing services, unlawfully accessed patient personal information, including, but not limited to, protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), patient names, dates of birth, and Social Security Numbers ("SSNs"), (collectively, "Sensitive Information")[1] for at least 82,601 individuals, including Plaintiff and Class Members. This employee has been prosecuted criminally for this breach.

5.       Defendant Miami Beach Healthcare has also reported two additional data breaches to the Department of Health and Human Services within the last two years affecting an additional

---

[1]      While Plaintiff uses the term "Sensitive Information" in this Complaint, this type of information is also commonly referred to as "Personally Identifiable Information." Regardless of what label the disclosed data is given, it is considered "Individually identifiable health information" within the scope of HIPAA, as it was received by a healthcare provider and relates to the provision of health care by Aventura Hospital and Medical Center.

3,508 individuals.[2] In total, Defendants have failed to adequately secure and allowed the unauthorized disclosure to unauthorized persons of Sensitive Information of 86,109 individuals, at a minimum.

6.      Plaintiff and Class Members sought and received medical care from Defendant Miami Beach Healthcare, and entrusted their Sensitive Information to Defendants in exchange for Defendants' guarantee that Defendants would fulfill their legal duty to safeguard their Sensitive Information. Defendants have publically notified patients that they would protect the Sensitive Information that patients were required to provide before receiving care from Defendants. However, Defendants failed to reasonably maintain that information in a secure manner, violated their duties to do so, and failed to notify patients of this failure in a timely manner, all of which are contrary to the reasonable expectations of patients including Plaintiff and Class Members and contrary to Defendants' avowed privacy practices.

7.      As a result of Defendants' failure to implement and follow adequate security procedures: (1) The Sensitive Information of Plaintiff and putative Class Members whom Defendant Miami Beach Healthcare routinely required be provided in exchange for providing healthcare services has already been stolen and traded or used by cyber criminals to commit or in attempts to commit fraud; and/or (2) Plaintiff and putative Class Members now face a substantial and imminent risk of the fraudulent use of that information.

8.      Defendants' lapses in information security have caused Plaintiff and Class Members to be aggrieved and to receive a diminished value for the services they paid Defendant, which included a guaranty and a reasonable expectation that their Sensitive Information would be

---

[2]      Defendant's lapse in information security has been widely reported in local media. http://www.local10.com/news/aventura-hospital-medical-center-reports-data-breach/28082920 (Last accessed February 18, 2015).

adequately protected. No reasonable patient would have purchased healthcare from Defendant Miami Beach Healthcare at the price he did or voluntarily provided his Sensitive Information to Defendants had he known about Defendants' lax information security practices that put his information at significant, imminent risk of identity fraud.

9.      Accordingly, Plaintiff brings this lawsuit for monetary and equitable relief alleging that Defendants have been unjustly enriched (Count I); and have violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II).

## PARTIES, JURISDICTION, AND VENUE

10.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) at least one member of the putative class is a citizen of a state different from a Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(1)-(2), because Defendants do business including owning, staffing, and operating healthcare facilities in this District and the events giving rise to Plaintiff's claims occurred in this District.

12.      Plaintiff is a Florida citizen and a current resident of Miami-Dade County, Florida. As a patient of Aventura Hospital and Medical Center, Plaintiff provided Sensitive Information to Defendants. Plaintiff's Sensitive information was contained in a database that was accessed by a third party without authorization. As a result of the data breach, Plaintiff is under a substantial and imminent risk of identity theft.

13.      Defendant, Miami Beach Healthcare Group, Ltd., maintains a principal place of business at One Park Plaza, Nashville, Tennessee. This Court has personal jurisdiction over Miami Beach Healthcare because it: is registered with the Florida Secretary of State, Division of

Corporations, as a Florida limited partnership; is a citizen of Florida; is engaged in substantial, continuous, systematic, and non-isolated business activity within the state of Florida; and maintains an agent for service of process in Florida: CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324. Miami Beach Healthcare is a citizen of Tennessee and Florida for diversity purposes.

14.     At all times material to this action, Miami Beach Healthcare has done business as and is the registered owner of the fictitious name, "Aventura Hospital and Medical Center."[3] Miami Beach Healthcare provided medical or other services to the 82,601 individuals who subsequently had their Sensitive Information disclosed to third parties without authorization while it had been entrusted to Defendants to secure and protect. Miami Beach Healthcare is a facility, subsidiary, or affiliate of Defendant HCA Holdings, Inc.

15.     HCA-EmCare Holdings, LLC d/b/a Valesco Ventures is a Delaware corporation and citizen, whose principal place of business is located at 1209 Orange Street, Wilmington, Delaware.  This Court has personal jurisdiction over Valesco because it is registered with the Florida Secretary of State, Division of Corporations, to conduct business in Florida, and is engaged in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  Valesco's agent for service of process is: The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

16.     At all times material to this action, HCA-EmCare Holdings, LLC has done business as and is the registered owner of the fictitious name "Valesco Ventures," whose address of ownership is listed as 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado.

---

[3]     *See* http://aventurahospital.com/about/ownership-statement.dot (last accessed February 18, 2015).

17.     At all times material, Plaintiff is informed and believes and alleges that each Defendant is responsible in some manner for the occurrences and injuries alleged herein, and that Plaintiff's and Class Members' injuries were proximately caused by Defendants.

18.     On information and belief, a traceable portion of the payments patients, including Plaintiff and Class Members, made to Defendant Miami Beach Healthcare Group, Ltd., for healthcare, was channeled through Valesco Ventures, and those payments constituted at least in part moneys used to offset costs for services related to maintaining patient information security that was defective and is the subject of this action. Plaintiff seeks to recoup an appropriate portion of these funds as Valesco together with Miami Beach Healthcare have been unjustly enriched.

19.     At all times material hereto, Plaintiff is informed and believes and alleges that each of the Defendants acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and was a proximate cause of injury thereby to Plaintiff and Class Members.

20.     At all times material hereto, Defendant Valesco acted as the agent of Defendant Miami Beach Healthcare, and acted in the course and scope of that agency and was acting with the consent, permission, authorization, satisfaction, and knowledge of Miami Beach Healthcare, which ratified and approved of the actions of Valesco.

21.     Plaintiff is informed and believes and alleges that each Defendant's operations were seamlessly integrated and each actively participated in the business practices about which Plaintiff complains. Accordingly, Miami Beach Healthcare and Valesco are included in and referred to throughout this Complaint collectively as "Defendants."

22.     Whenever in this Complaint reference is made to any act or omission of a corporate defendant, partnership, or other entity, such allegations shall be deemed to mean that the directors,

officers, agents, employees, distributors, partners, contractors, third-party sales agencies or representatives of said corporate defendant, partnership or other entity, did, authorize or command such act or omission while actively engaged in the management, operation, control or representation of the affairs of said corporate defendant, partnership or entity, and while acting within the course and scope of their agency, distributorship, contract, employment, representation and capacity.

23.    All conditions precedent to this action, if any, have been met, satisfy, or waived.

## FACTUAL BACKGROUND
### Data Breaches Lead to Identity Theft

24.    The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use identifying data such as SSNs to open financial accounts, receive government benefits and incur charges and credit in a person's name.[4] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records…[and their] good name."

25.    A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[4]    *See* http://www.gao.gov/new.items/d07737.pdf (Last accessed February 18, 2015).

26.     A similar recent report about health-care related identity theft fraud sponsored by Experian indicated that the out-of-pocket costs incurred by medical identity theft victims could run into thousands of dollars.[5] The report also notes "medical identity theft can create inaccuracies in their permanent medical records…Such inaccuracies can result in misdiagnosis, errors in prescriptions, delay in receiving medical treatment and mistreatment."[6]

27.     Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years. South Florida in particular faces an epidemic of identity theft. The Federal Trade Commission recently indicated[7] that the Miami-Fort Lauderdale-West Palm Beach, Florida Metropolitan Statistical Area ranked #1 in the nation for complaints of identity theft, with a staggering 18,941 complaints, or 340.4 per 100,000 inhabitants. Notably, the nearby Naples-Immokalee-Marco Island, Florida Metropolitan Statistical Area ranked #3, with 688 complaints, or 214 per 100,000 inhabitants. The #2 ranked Columbus, Georgia Metropolitan Statistical Area had a mere 633 complaints, less than 1/3 the number in South Florida.

### Aventura Hospital and Medical Center's Privacy Policy

28.     Plaintiff and each Class Member received healthcare services at Aventura Hospital and Medical Center.  As a condition to receipt of those services, Defendant Miami Beach Hospital regularly required Plaintiff and each Class Member to entrust to Defendants, Plaintiff and Class

---

[5]     2013 Survey on Medical Identity Theft, Sponsored by the Medical Identity Fraud Alliance with support from ID Experts®, and Independently conducted by Ponemon Institute LLC. Publication Date: September 2013 (p. 5).
[6]     *Id.* at 7.
[7]     *See* Consumer Sentinel Network Data Book for January-December 2013, release February 2014.   Available   at:   http://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2013/sentinel-cy2013.pdf   (last   accessed   February   18, 2015).

Members' Sensitive Information, including, but not limited to, protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), including patient names, dates of birth, and Social Security Numbers ("SSNs").

29.     When patients are admitted for healthcare, Defendant Miami Beach Healthcare routinely provides them a copy of their "Notice of Privacy Practices," which Defendant reiterates on its website.[8]

30.     Among other guarantees, Defendant Miami Beach Healthcare assured Plaintiff and Class Members: "We are required by law to maintain the privacy of your health information" and "[w]e will abide by the terms of this notice."

31.     Also, in its Notice of Privacy Practices, Defendant Miami Beach Healthcare discloses that its business associates may be privy to Sensitive Information, but assured Plaintiff and Class Members that they would only "disclose [their] health information to our business associates so that they can perform the job we've asked them to do and bill you or your third-party payer for services rendered."

### The Data Breach at Aventura Hospital and Medical Center

32.     Identify theft can be defined as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. §1022.3(h).

33.     Defendant Miami Beach Healthcare reported the theft of unsecured protected health information from Aventura Hospital and Medical Center affecting 86,109 individuals to the U.S. Department of Health and Human Services in three incidents spanning periods from January 1,

---

[8]     *See* http://aventurahospital.com/about/privacy-notice.dot (Last accessed February 18, 2015).

2012 to September 12, 2012, as well as September 13, 2012 to June 9, 2014, and October 10, 2012 to December 31, 2012.

34.     According to Defendant Miami Beach Healthcare, a theft of the electronic medical records containing unsecured protected health information affecting 2560 individuals that reportedly occurred during or involved information disclosed without authorization during the period January 1, 2012, to September 12, 2012.  Defendant Miami Beach Healthcare reported another theft of a desktop computer containing unsecured protected health information of 948 individuals that occurred during or involved information disclosed without authorization during the period, October 1, 2012, to December 31, 2012. Upon information and belief, at least one of the foregoing data breaches reported by Miami Beach Healthcare led to criminal prosecutions and an indictment involving fraudulent use or attempted use of the information stolen.

35.     The single largest identity theft incident Defendant Miami Beach Healthcare reported to the U.S. Department of Health and Human Services involved, as HHS described it, the "theft, unauthorized access/disclosure" of Sensitive Information, which Defendants have indicated was perpetrated by an employee of Defendant Valesco and reportedly occurred during, or involved information disclosed without authorization during, the period from September 13, 2012, to June 9, 2014. This identity theft incident affected 82,601 individuals, including Plaintiff and Class Members—whose information Defendants failed to adequately protect.

36.     Defendants Miami Beach Healthcare and Valesco publically acknowledge that law enforcement officials concluded that this Sensitive Information was stolen on June 10, 2014, and Defendants admit they knew about the breach as early as May 28, 2014.

37.     Yet, Defendants did not publically reveal the breach to Plaintiff and Class Members until on or about September 9, 2014—three months after the end of the period in which Sensitive Information was compromised.

38.     The Notice of Data Breach (attached as "Exhibit A") is the notification Defendants provided Plaintiff and Class Members on or about September 9, 2014.

39.     While Defendants state in the Notice of Data Breach that "[n]o personal financial or health information was improperly accessed," this is contradicted by the their statement that information stolen "included your name, date of birth, and social security number." Under 45 C.F.R. 164.514, names, dates including dates of birth, and social security numbers are considered protected health information when they can be related to the fact that the individual was a patient of Aventura Hospital and Medical Center.[9]

40.     Moreover, Fla. Stat. § 501.171 requires that Defendants provide notice of the data breach no later than 30 days after determining a breach occurred. Thus, Defendants' Notice (attached as Exhibit A) that Defendants provided 90 days after it learned of the breach violates this statute.

41.     Defendants, knowing that Sensitive Information was subject to the strict privacy and security protections of HIPAA, and other standards and regulations, delayed and otherwise failed to properly and timely provide notice to Plaintiff and the other members of the Class regarding the stolen Sensitive Information.

---

[9]     *See* http://www.hhs.gov/ocr/privacy/hipaa/understanding/coveredentities/De-identification/guidance.html (Last accessed September 17, 2014). "Protected health information includes many common identifiers (e.g., name, address, birth date, Social Security Number) when they can be associated with the [the provision of health care to the individual]."

42.     Upon information and belief, Defendant Miami Beach Healthcare failed to effectively supervise its workforce and business associates (including those workers supplied by Valesco) with respect to access and disclosure of protected health information and other Sensitive Information of Plaintiff and Class Members.

43.     Upon information and belief, Defendants failed to implement HIPAA and industry standards by inadequately encrypting the protected health information including the Sensitive Information of the 2,560 individuals contained in the above-referenced stolen electronic medical records, and of the 948 individuals whose stolen Sensitive Information was contained on the above-referenced desktop computer by an employee of Defendant Valesco.

### Aventura Hospital's Credit Monitoring Offer is Inadequate

44.     According to the Notice of Data Breach, Defendants have offered Plaintiff and Class Members a year of AllClear SECURE credit monitoring services, or, if Plaintiff or Class Members provide All Clear with additional information, the AllClear Pro service. The information in this notice and credit monitoring in general is and would be material to a reasonable consumer in Plaintiff's and Class Members' positions and likely to affect his or her choice regarding whether or not to choose the AllClear product.

45.     Defendants' one-year offer is an insufficient remedy for Defendants' data breach, because individuals can request their credit report once per year at no charge. This notice fails to reveal this material qualification.

46.     As stated above, federal officials and experts on identity theft report that victims of data breaches commonly face multiple years of ongoing identity theft.

47.     The AllClear monitoring program also does not provide any compensation for the release of Plaintiff's and Class Members' Sensitive Information. Upon information and belief,

Defendants know, or should know, that many of the patients, many of whom are elderly and/or infirm, are not technically savvy and would not grasp the magnitude and significance of its data breach and thus would fail to utilize AllClear's services.

48.     Furthermore, upon information and belief, Defendants' offer of "free" services by AllClear is misleading and provides no disclosure that when Plaintiff and Class Members call for "free" credit monitoring, Defendants launch into a sales pitch for additional services—a tactic called "upselling—that would require payment from Plaintiff and Class Members.

**Plaintiff's Experience at Aventura Hospital and Medical Center**

49.     Plaintiff was admitted to Aventura Hospital and Medical Center on or about January 14, 2011.  To Plaintiff's knowledge, he has never been a victim of identity theft prior to having his Sensitive Information stolen while in Defendants' care, possession, and control. He is very cautious with respect to that information and entrusting anyone with his Sensitive Information.

50.     During Plaintiff's admission, Defendants required him to provide his protected health information, including his name, date of birth, Social Security Number, address, and telephone number.  Defendant Miami Beach Healthcare also presented him with its Notice of Privacy Practices.

51.     Nevertheless, the Sensitive Information that Defendants required Plaintiff to provide them was not kept confidential and secure as stated in Defendant Miami Beach Healthcare's Notice of Privacy Practices. Nor was it kept in accordance with the strict privacy and security protections of HIPAA, and other standards and regulations.

52.     Plaintiff fell victim to the above-described identify theft incident Defendants reported to the U.S. Department of Health and Human Services and that involved, as HHS

described it, the "theft, unauthorized access/disclosure" of Sensitive Information, which Defendants have indicated was perpetrated by an employee of Defendant Valesco.

53.     Plaintiff received the Notice of Data Breach (attached as "Exhibit A") dated September 9, 2014—90 days after the end of the period in which Sensitive Information was compromised.

54.     As a result of Defendants' failure to provide adequate information security, Plaintiff's Sensitive Information is now in the hands of identity thieves, and Plaintiff now faces a substantial and imminent risk of the fraudulent use or has undergone fraudulent use of that information.

**The Common Injury**

55.     Defendants' information security practices and data breaches are and would be material to a reasonable patient, and would likely affect his or her choice with respect to seeking healthcare from Defendant Miami Beach Healthcare, including, but not limited to, his or her decision to pay prices that Defendant Miami Beach Healthcare charges for its services and to entrust his or her Sensitive Information to Defendants.

56.     Defendants were and are in a superior position to know of their data security risks and capabilities, and terms of their AllClear product offer; and such information is and was within Defendants' exclusive knowledge and not accessible to Plaintiff and Class Members.  In truth and in fact, Defendant Miami Beach Healthcare's Notice of Privacy Practices guaranteed the security of Plaintiff's and Class Members' Sensitive Information.

57.     Defendants, however, have violated this guarantee and violated their legal duties to secure Plaintiff's and Class Members' Sensitive Information. Defendants also failed to disclose the fact that the Sensitive Information similar to Plaintiff's and Class Members' Sensitive Information

if entrusted to Defendants would not be kept securely and would be subject to identity theft while in Defendants' possession. And in their Notice of Data Breach, Defendants failed to disclose that calling the credit monitoring service listed in the Notice would entail listening to a sales pitch to be sold additional services for payment.

58.    As a result of Defendants failure to implement and follow adequate security procedures: (1) The Sensitive Information of Plaintiff and putative Class Members whom Defendants routinely required be provided in exchange for providing healthcare services has already been stolen and traded or used by cyber criminals to commit or in attempts to commit fraud; and/or (2) Plaintiff and putative Class Members now face a substantial and imminent risk of the fraudulent use of that information, given that their information is in the hands of persons stealing the information to sell or to use in the furtherance of various frauds.

59.    Defendants' lapses in information security have caused Plaintiff and Class Members to be aggrieved and to receive a diminished value for the services they paid Defendants, which included a guaranty and a reasonable expectation that their Sensitive Information would be adequately protected. No reasonable patient would have purchased healthcare from Defendant Miami Beach Healthcare at the price she did or voluntarily provided her Sensitive Information to Defendants had she known about Defendants' lax information security practices that put her information at significant, imminent risk of identity theft.  Defendant's acts and practices have enabled them to charge and exact an unwarranted premium for their services provided to Plaintiff and Class Members.

60.    Through the foregoing violations and series of data breaches, Defendants have engaged in a course of conduct that has systematically caused Plaintiff and Class Members to be

aggrieved and to suffer monetary injuries for which Defendants owe restitution; are subject to disgorgement; and/or should be enjoined.

61.     Upon and belief, Plaintiff's and Class Members' Sensitive remains in the hands of identity thieves and in the cyber black market.  Defendants' course of conduct set out above is ongoing and adverse to the public interest and the policies underlying FDUTPA and the common law.  Unless enjoined and restrained by an order of this Court, Defendants will continue to engage in the unlawful acts and practices set out herein. Unless enjoined by the Court, Defendants will continue to aggrieve and cause monetary loss to Plaintiff, Class Members, and future patients.

## CLASS ALLEGATIONS

62.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) and Rule 23(c)(4) and on behalf of himself and a "Class" or "Class Members" consisting of similarly situated individuals, defined as follows:

> All individuals in the United States that paid Aventura Hospital and Medical Center for services performed for an individual whose Sensitive Information was compromised within the four years prior to the filing of the Complaint in this action.[10]

63.     **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time, but on information and belief, there are approximately 86,109 members throughout the country, making joinder of each individual member impracticable. Ultimately, the members of the Class will be easily identified through Defendant Miami Beach Healthcare's and Valesco's records. Names and addresses of members of the Class are available from Defendant Miami Beach Healthcare's records. Notice can be provided to the members of the Class through direct mailing,

---

[10]     Excluded from the Class are Plaintiff's Counsel, Defendants, and their affiliates, employees, agents, and attorneys, and the Court. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that it should be expanded or otherwise modified. Plaintiff reserves the right to establish sub-classes as appropriate.

publication, or otherwise, using techniques and a form of notice similar to those customarily used in consumer class actions arising under Florida state law and federal law.

64.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class: Plaintiff as Class Members received healthcare services from Defendant Miami Beach Healthcare; was required provide his Sensitive Information as a condition of receiving the services; he was a beneficiary of the guaranty provided in Defendants' Notice of Privacy Practices; nonetheless his Sensitive Information was stolen while in the possession of Defendants; and as a result his Sensitive Information is in the hands of identity thieves, and Plaintiff is at a substantial, imminent risk of the fraudulent use of his Sensitive Information. Also, Plaintiff was sent the Notice of Data Breach (attached as "Exhibit A").

65.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex privacy litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

66.     **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The financial detriment suffered individually by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impractical for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class-action

device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. It makes no sense for the same issues with respect to Defendants' data breaches to be heard and separate courts. Uniformity of decisions will be ensured through class treatment of this case.

67.    **Commonality and Predominance**: Common questions of law or fact exist for all members of the Class and predominate over any questions affecting only individual members, and include but are not limited to:

A.   Whether Defendants took reasonable measures and satisfied their legal duties to safeguard Plaintiff's and the Class Members' Sensitive Information;

B.   Whether Defendants notified Plaintiff and the Class of the data breach within a reasonable time;

C.   Whether it is equitable for Defendants to retain the full value Plaintiff and the Class members paid for services and whether Defendants have been unjustly enriched;

D.   Whether Plaintiff and Class Members have suffered monetary losses and the proper measure of those losses;

E.   Whether Defendants engaged unfair or deceptive acts or practices under FDUPTA and Plaintiff and Class Members have been aggrieved thereby; and,

F.   Whether Plaintiff and the Class are entitled to injunctive or declaratory relief.

68.    **Rule 23(b)(2)**: The prerequisites for maintaining the Class for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are satisfied because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of

conduct for Defendants. For example, one court may decide the challenged actions are illegal and enjoin them, while another court may decide those same actions are not illegal. Moreover, individual actions may, as a practical matter, be dispositive of the interests of Class Members, who would not be parties to those actions. Defendants' actions are generally applicable to the Class as a whole and make equitable remedies, including declaratory relief, with respect to the Class as a whole appropriate.

69.     **Rule 23(c)(4)**: Class certification is proper with respect to particular issues of liability that predominate over individual issues that the Court could resolve in one fell swoop and advance the claim of each Class Member.

70.     Plaintiff and his counsel or unaware of any problems that would hinder or obstruct the management of this action as a class action.

<u>**COUNT I**</u>
**Unjust Enrichment/Restitution**
**(On Behalf of Plaintiff and the Class)**

71.     Plaintiff repeats and re-alleges Paragraphs 1-70 as if fully set forth herein.

72.     Defendants' unlawful conduct as described in this Complaint, was directed, initiated, and emanated from Aventura Hospital and Medical Center, to the detriment of Plaintiff and Class Members in Florida and throughout the United States.

73.     Plaintiff and members of the Class conferred a monetary benefit on Defendant Miami Beach Healthcare who them conferred a portion of such benefit on Defendant Valesco. Defendants received and retained money belonging to Plaintiff and the Class in the form of payment for services.

74.     Defendants appreciate or have knowledge of such benefit.

75.     The services that Plaintiff and the Class paid Defendants for, in part, included Defendants' promise to keep Sensitive Information secure as required by law. Defendants used the monies that Plaintiffs and the Class paid to Defendants, in part, to pay for the administrative costs of data management and security.

76.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and members of the Class, because Defendants failed to monitor their employees, contractors, and agents, whom Defendants provided access to the Sensitive Information of Plaintiff and Class Members.

77.     As a result of Defendants' conduct, Plaintiff and members of the Class have suffered identity theft. As a result of Defendants' conduct, Defendants have wrongfully gained sums from Plaintiff and members of the Class and Members of the Class and Plaintiff had paid monies to Defendants in part for the assurance and maintenance of their Sensitive Information in a secure manner according to Defendants' legal duties and industry standards, when such was not the case. Plaintiff and Class Members suffered losses attributable to the diminished value of the services they received, And Plaintiff and Class Members will continue to be aggrieved and suffer monetary losses including, but not limited to, a substantial, imminent risk of fraudulent uses of their identities, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; missed wages; expenses and/or time spent initiating fraud alerts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on behalf of himself and on behalf of the Class Members defined above, as follows:

A. Certifying this action for a class treatment under Rule 23(b)(3), *Fed. R. Civ. P.*, and appointing Plaintiff as representative for said Class Members and Plaintiff's counsel as Class Counsel;

B. Finding Defendants were unjustly enriched; and awarding Plaintiff and Class Members restitution or disgorgement;

C. Awarding reasonable costs and attorneys' fees;

D. Awarding applicable pre-judgment and post-judgment interest; and

E. Awarding such other relief as the Court may deem just and proper.

## COUNT II
### Violation of FDUTPA
### (On Behalf of the Plaintiff and the Class)

78.     Plaintiff repeats and re-alleges Paragraphs 1-70 as if fully set forth herein.

79.     Defendants' unlawful conduct as described in this Complaint, was directed, and emanated from Defendant Miami Beach Healthcare's hospital, Aventura Hospital and Medical Center, to the detriment of Plaintiff and Class Members in Florida and throughout the United States.

80.     Count II is brought on behalf of Plaintiff individually and on behalf of the Class Members certified under Rule 23(b)(2) set forth above, in addition to, or in the alternative to Count I.

81.     This is an action for injunctive and declaratory relief pursuant to Fla. Stat. chapter 501, Part II, the "Florida Deceptive and Unfair Trade Practices Act" ("FDUTPA").

82.     Section 501.204(1) of FDUTPA prohibits Defendants from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83.     FDUTPA is meant to "protect the public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

84.     FDUTPA also provides: "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1).

85.     Defendants' information security practices and data breaches are and would be material to a reasonable patient, and would likely affect his or her choice with respect to seeking healthcare from Defendant Miami Beach Healthcare, including, but not limited to, his or her decision to pay prices that Defendant Miami Beach Healthcare charges for its services and to entrust his or her Sensitive Information to Defendants.

86.     Defendants were and are in a superior position to know of their data security risks and capabilities and the terms and services associated with the AllClear product offer; and such information is and was within Defendants' exclusive knowledge and not accessible to Plaintiff and Class Members.  In truth and in fact, Defendant Miami Beach Healthcare's Notice of Privacy Practices guaranteed the security of Plaintiff's and Class Members' Sensitive Information.

87.     In numerous instances through the means described above however Defendants (1) did not uphold this guarantee;  (2) did not implement reasonable appropriate measures to protect the Sensitive Information of Plaintiff and Class Members against authorized access and use; (3) routinely failed to disclose to Plaintiff and Class Members that they were unable or chose not to implement standard measures to ensure the safe and secure environment for the storage and use of Plaintiff's and Class Members' Sensitive Information; (4) failed to disclosed material information

regarding their credit monitoring service offer; and (5) unreasonably delayed in providing notice of their data security breach to Plaintiff.  Defendants have deprived Plaintiff and Class Member of making a meaningful informed choice regarding entrusting their Sensitive Information to Defendants or using the AllClear product.

88.     Accordingly, Defendants have engaged in representations, acts, or practices that are material and likely to mislead a consumer acting reasonably under the circumstances, in violation of FDUTPA. And as stated in in paragraphs 55-61, as a result, Plaintiff and Class Members have been aggrieved.

89.     As set forth above, Defendants have failed to employ appropriate measures to protect the Sensitive Information of Plaintiff and Class Members against authorized access and use; and failed to provide them timely notice of the data breaches that have put their information at substantial, imminent risk or actual use by criminals wanting to purchase and use the information to commit fraud.

90.     Defendants' actions caused or are likely to cause substantial injury to patients that they cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to patients or competition; or Defendants' actions offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers.

91.     Accordingly, Defendants have engaged in unfair acts or practices under FDUTPA. And as stated in in paragraphs 55-61, as a result, Plaintiff and Class Members have been aggrieved.

92.     Pursuant to the FDUTPA, Plaintiff and the Class are entitled to permanent injunctive relief and a declaration without proof of monetary damage, loss of profits, proof of reliance, or intent to deceive. Plaintiff and the Class seek equitable relief and to enjoin Defendant on the terms that the Court considers appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on behalf of himself and on behalf of the Class Members defined above, as follows:

A Certifying this action for a class treatment under Fed. R. Civ. P. Rule 23(b)(2), and appointing Plaintiff as representative for said Class Members and Plaintiff's counsel as Class Counsel;

B. Finding and declaring Defendants violated FDUTPA; and awarding Plaintiff and Class Members injunctive or declaratory relief as necessary to protect the interests of the Class, including an order requiring that Defendant implement improved screening and supervision of individuals with access to Sensitive Information, and requiring Defendants to protect all data collected through the course of their business in accordance with HIPAA and industry standards;

C. Awarding reasonable costs and attorneys' fees;

D. Awarding applicable pre-judgment and post-judgment interest; and

E. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: February 19, 2015                                  Respectfully submitted,

*/s/ Steven R. Jaffe*
Steven R. Jaffe (Fla. Bar No. 390770)
E-mail: steve@pathtojustice.com
Mark S. Fistos (Fla. Bar No. 909191)
E-mail: mark@pathtojustice.com
Seth Lehrman (Fla. Bar No. 132896)
E-mail: seth@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

By: */s/ Scott D. Owens*
Scott D. Owens (Fla. Bar No. 597651)
E-mail: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666

By: /s/ Bret L. Lusskin, Esq.
Bret L. Lusskin (Fla. Bar No. 28069)
E-mail: blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844

*Attorneys for Plaintiff*
*and the putative Class*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court's CM/ECF system on February 19, 2015, and will be served on all counsel of record listed below through the ECF system.

*/s/ Steven R. Jaffe*
Steven R. Jaffe

**SERVICE LIST**
*Gilmore v. Miami Beach Healthcare Group, LTD. et al*
**CASE NO. 1:14-cv-24583-MGC**
**United States District Court, Southern District of Florida**

Walter J. Tache (Fla. Bar No. 28850)
wtache@cfjblaw.com; (Primary)
bwithers@cfjblaw.com; miaecf@cfdom.net (Secondary)
Gavrila A. Brotz (Fla. Bar No. 034594)
GBrotz@cfjblaw.com (primary)
Irma T. Solares (Fla. Bar No. 797073)
ISolares@cfjblaw.com (primary)
CARLTON FIELDS JORDEN BURT, P.A.
100 SE Second Street, Suite 4200
Miami, FL 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
*Counsel for Miami Beach Healthcare Group, Ltd.*
*d/b/a Aventura Hospital and Medical Center*

Edward M Waller, Jr. (Fla. Bar No. 106341)
edward.wallerabipc.com
John Emmanuel (Fla. Bar No. 475572)
john.emmanuel@bipc.com
BUCHANAN INGERSOLL & ROONEY P.C.
501 E. Kennedy Boulevard, Suite 1700
Tampa, FL 33602
Telephone: (813) 228-7411
Facsimile: (813) 229-8313
*Counsel for HCA Holdings, Inc.*

Edmund T. Henry, III (Fla. Bar No. 206008)
ehenry@shutts-law.com
SHUTTS & BOWEN LLP
201 S. Biscayne Boulevard
1500 Miami Center
Miami, Florida 33131
Telephone: (305) 358-6300 Telephone
Facsimile: (305) 381-9982 Facsimile
*Counsel for Defendant EmCare, Inc.*

EXHIBIT "A"



VALESCO VENTURES

Processing Center · P.O. Box 3825 · Suwanee, GA 30024

55 1 16743 ********************AUTO**5-DIGIT 33008
Larry Gilmore

September 9, 2014

ılıllıılıılılıllılıllıılıllıılıpıllılıııpılılılıııllılıllı

RE: NOTICE OF DATA BREACH

Dear Larry Gilmore,

I am writing to let you know that Valesco Ventures, which provides hospital staffing and ancillary services, was recently made aware of a situation involving the possible theft of personal information about you from Aventura Hospital and Medical Center. We are committed to the security of patient information, and we apologize for this incident. This letter describes what we know so far. It also outlines steps you may take to protect your personal information, and the assistance being offered to you.

On May 28, 2014, Valesco Ventures was notified that an employee may have improperly accessed the personal identifying information of a number of patients of Aventura Hospital and law enforcement was contacted. On June 10, 2014, law enforcement concluded that this employee had improperly accessed this patient information. This information included your name, date of birth, and social security number. No personal financial or health information was improperly accessed.

Shortly after law enforcement was notified, Valesco Ventures and Aventura Hospital suspended the individual's computer and physical access to patient data, and began assessing how to mitigate risks to all patients. Valesco Ventures and Aventura Hospital continue to work with law enforcement to preserve the information that is important to their investigation, and we determined that the inappropriate access occurred between September 13, 2012 and continued through June 9, 2014. Valesco Ventures and Aventura Hospital are assisting law enforcement to identify and prosecute all responsible parties.

To help you protect yourself against the risk of identity theft, we have arranged to have AllClear ID protect your identity for 12 months at no cost to you. The following identity protection services start on the date of this notice and you can use them at any time during the next 12 months.

AllClear SECURE: The team at AllClear ID is ready and standing by if you need help protecting your identity. You are automatically eligible to use this service – there is no action required on your part. If a problem arises, simply call 1-855-683-1164 (toll free) or +1-512-579-2547 (toll) and a dedicated investigator will do the work to recover financial losses, restore your credit and make sure your identity is returned to its proper condition. AllClear maintains an A+ rating at the Better Business Bureau.

AllClear PRO: This service offers additional layers of protection including credit monitoring and a $1 million identity theft insurance policy. For a child under 18 years old, AllClear ID ChildScan identifies acts of credit, criminal, medical or employment fraud against children by searching thousands of public databases for use of your child's information. To use the PRO service, you will need to provide your personal information to AllClear ID. You may sign up online at enroll.allclearid.com or by phone by calling 1-855-683-1164 (toll free) or +1-512-579-2547 (toll) using the following redemption code:1330356583.



Please note: Additional steps may be required by you in order to activate your phone alerts.

We sincerely regret this incident and apologize for it. We are committed to the proper handling and protection of your information. If you have questions or concerns about this letter or would like assistance, please contact our representative at 1-855-683-1164 (toll free) or +1-512-579-2547 (toll). Alternatively, you may e-mail Aventura Hospital and Medical Center at AHMC.Privacy@HCAHealthcare.com.

Sincerely,

Terry Meadows, M.D.
Manager